Maurice Wahl, J.
The petitioner, a lessee-landlord of a five-year lease, the term commencing on June 1, 1957, brings these proceedings to oust the tenant from rooms 817 and 818 in the *778 building at 551 Fifth Avenue, New York City. The tenant is a statutory tenant and has occupied the space for many years. The petitioner landlord occupies other space in the building and in the petition alleges that it “ seeks in good faith to obtain possession of such business space for its own immediate and personal use.”
The petitioner relies upon a new amendment (par. [2-a]) to subdivision (d) of section 8 of the Commercial and Business Rent Laws (L. 1945, chs. 3, 314, as amd. by L. 1957, chs. 452, 453) as a basis for the relief sought. This paragraph authorizes possession of space where: “ Possession is sought by a person who is the lessee or sub-lessee under a lease for a term of five years or more who seeks in good faith to obtain possession of the commercial [business] space for his immediate and personal use, or possession is sought by such lessee or sub-lessee to give possession to another person who is a subsidiary corporation at least ninety per centum of whose stock is owned by such lessee or sub-lessee, and such lessee or sub-lessee seeks in good faith to recover possession of the commercial [business] space for the immediate and personal use of such subsidiary corporation ”.
It is contended by the tenant that the petitioner has failed to prove sufficient facts to authorize possession to it under this new subdivision. The tenant maintains that in enacting this new paragraph it was the intention of the Legislature that it was to apply to leases in existence for a period of five years or more, at the time of the enactment of the legislation and not to leases made subsequent to its enactment.
The petitioner contends that the language is sufficiently unambiguous to justify the eviction of the tenant.
To give to this new paragraph the construction urged by the landlord would for all practical purposes put an end to rent control of commercial and business space. The end of rent control was not contemplated or intended by the enactment of this paragraph for the Legislature did extend the statutes for another year until July 1, 1958 (L. 1957, chs. 452, 453). (See Fischel v. Steel Management Co., 286 App. Div. 780; Olympic Assets v. Hatch & Co., 1 Misc 2d 653 [App. Term, First Dept., 1956], affg. a decision of this court, 208 Misc. 12.)
In the Fischel case cited above in construing subdivision (g) of section 8 of the act the court said (p. 782): “ To interpret the statute in accordance with defendant’s contention would necessarily result in decontrol of business commercial space to an extent which the Legislature did not intend to accomplish in 1949 when it adopted subdivision (g) of section 8.”
*779 In the Hatch case cited above, Justice Edeb of the Appellate Term, in referring to subdivision (g) of section 8 of the act and the “ quit and surrender ” clauses in leases, said (pp. 654-655): “ All business and commercial tenants having at any time had leases containing such a clause would under such an interpretation be vulnerable to a ‘ pincer ’ attack by landlords invoking subdivisions (e) and (g) of section 8 against them, whether they refused to sign or did sign renewal leases after the effective date of subdivision (g). The Legislature could not have intended by such a devious method to decontrol business and commercial space, and such an interpretation should not be read into subdivision (g) by the courts in the absence of specific statutory language that a lease containing the formal surrender clause constitutes an agreement ‘ to terminate his occupancy of the premises on a date certain in the future Such a holding, rendering tenants helpless to protect their statutory rights, would run counter to the evident intendment of the legislative commission on the rent laws which, when recommending in 1951 a change in subdivision (g), referred to ‘ agreements to vacate on a date certain ’ being ‘ safeguarded by requirement that these agreements had to be executed not less than three months after the commencement of the term of the lease It would be quite anomalous to protect tenants in possession under unexpired leases against their own improvidence in agreeing within this three-month period of immunity to vacate before or after the expiration of their leases, while at the same time leaving defenseless tenants in possession under expired leases faced with demands by their landlords to execute renewal leases. Were landlords’ interpretation to be upheld, there would be no ‘ safeguard ’ left for tenants.”
In fact this court in Olympic Assets v. Hatch & Co. (208 Misc. 12, 15, supra) had occasion to make an observation which is pertinent herein: “ It is necessary to remember that in applying rules of statutory construction, we must avoid interpretations which may reach an illogic never intended by the Legislature. ’ ’
The general rule of construction of statutes that when the language of the statute is clear that the courts must give the language its plain meaning is not applicable here for the new paragraph is clearly ambiguous when read in with the other subdivisions of section 8.
The legislative report on the new paragraph clearly proves its ambiguity. This report (1957 Report of Commission to Study Rents and Rental Conditions) with respect to this section provides as follows: “ To confer upon a lessee of business or *780 commercial space the rights of an owner of the building where, in good faith, the lessee requires additional space occupied by a statutory tenant within the same building. (Business Law, § 8, Subd. d, Paragraph 2-a; Commercial Law, § 8, Subd. d, Paragraph 2-a.) ”
Though the report adds more confusion as to the meaning of the paragraph, it does, however, indicate that it was the committee’s intention to limit and restrict the application of this new provision in section 8.
The legislative history of the law and the amendments thereto should be considered to determine the meaning of the new paragraph incorporated into the law this year. The new matter becomes an integral part of the statute but does not supersede the existing provisions which are still part and parcel of the law. The entire law is therefor to be viewed as a composite entity in order to arrive at the meaning of the new section. (Matter of Greenberg, 141 Misc. 874, affd. 236 App. Div. 733, affd. 261 N. Y. 474; Matter of Bashford, 178 Misc. 951.)
“ The courts will not impute to the lawmakers a futile intent or read into a statute a limitation which would render it futile.” (Matter of Bashford, supra, p. 955.)
To apply the landlord’s interpretation to the new paragraph would render nugatory the requirements of paragraph (2) of subdivision (d); and subdivisions (k), (kk), (h), and (m) of section 8. Moreover, it would make it possible for an owner to circumvent the equity requirements under paragraph (1) of subdivision (d) where he seeks possession by merely giving to his corporate business entity a five-year lease. It appears to this court that such a result was never intended by the Legislature or it would have repealed the subdivisions referred to.
The question arises, what then was the legislative purpose in enacting the new paragraph and what reasonable construction is to be given to the amendment? An examination into the history of the laws and the annual amendments thereto provides some basis as to the meaning of the new section.
When the rent laws were amended in 1946 (L. 1946, chs. 272, 273) subdivision (h) of section 8 was added and authorized possession of space to a lessee of 10 years or more where all other conditions contained in this section were met. This subdivision, then, required the existence of at least a 10-year lease in effect on January 24, 1945 as one of the conditions before possession could be obtained. Subdivision (k) authorizing possession for a store lessee with a 10-year lease or more where other conditions contained in the section were met, was enacted in 1949 (L. 1949, chs. 534, 535). Other conditions were as to *781 rental and that the lease be noncancellable except under few circumstances later written into law. There have been many amendments to this subdivision. Later, subdivision (m) was enacted in 1953 (L. 1953, chs. 451, 452) to afford a lessee or main tenant who was a doctor, lawyer, etc. who had sublet part of his space and now required possession for his own use, to obtain possession of such space. A 21-year lessee of an entire building was also afforded the right of possession where he sought possession for his own use, by the amendments to the laws in 1950 (L. 1950, chs. 326, 327). This is paragraph (2) of subdivision (d).
In 1953 subdivision (kk) was also enacted (L. 1953, chs. 451, 452) to authorize possession for a lessee where the prospective lessee would take a lease for five years or more for one floor or more and the tenant to be ousted occupied 25% or less of the space on the floor, or if the tenant seeking the space already occupied more than four times the space of the tenant to be ousted, the fact that he occupied 25% or less of the floor did not save him. The landlord, however, was required to relocate the tenant to other space in the building. This subdivision was amended several times and in 1957 (L. 1957, chs. 452, 453) it was again amended to eliminate from its provisions the requirement of relocation by the landlord. The new amendment also provides that if possession is sought by one who now has twice the space in the building than the tenant to be ousted, it matters not that such tenant occupies more than 25% of the space of the floor.
It may be noted that this subdivision authorized possession to a tenant already in the building or to a new tenant where there is a five-year lease for at least one floor in the building made with the tenant seeking the space.
Apparently the intention of the Legislature in enacting paragraph (2-a) of subdivision (d) and the only reasonable interpretation of the paragraph when considered in the light of the already existing subdivisions in section 8 with respect to lessees, is that the new paragraph was to apply to a tenant who, at the time the statute takes effect had a five-year or longer lease for the space and desired possession for his own use of part or all of the space from the statutory tenant and was unable to qualify for possession under any already existing subdivision of section 8. Under subdivision (m) a lawyer, doctor, etc., would have the right to possession from his subtenant without any requirement as to the terms of the lease. However, tenants not engaged in the professions or vocations stated in the subdivision, are not entitled to possession.
*782 This construction of the new paragraph which gives relief to existing five-year lessees of premises where they seek possession for their own use from statutory tenants does not conflict with any other subdivision or lessen the requirements of any particular subdivision before possession becomes available to the lessee. Subdivision (kk) authorises possession to a new five-year lessee where the other requirements of the section are met. Subdivision (k) authorizes possession to a new 10-year lessee of a store tenant where all other conditions are met. Certainly the new paragraph was not enacted to render these subdivisions obsolete.
This interpretation does not render the rent laws futile as the petitioner’s construction would but gives full cognizance to all its provisions retaining control of evictions in all the areas intended by the Legislature. Significant also of the legislative intent, is the absence of an amendment to article 83 of the Civil Practice Act this year authorizing a five-year lessee to institute dispossess proceedings.
In 1952 the Legislature amended section 1414 of the Civil Practice Act authorizing a lessee of a lease for a term of not less than 10 years to institute dispossess proceedings, thus giving this remedy to tenants of new 21-year leases or 10-year leases where no landlord and tenant relationship existed between the new lessee and the statutory tenant. (L. 1952, ch. 351.) The likelihood is that there is already an existing landlord and tenant relationship between the parties, where the five-year lease was in effect when the new paragraph became law on April 12, 1957.
The tenant’s contention as to the meaning of the new paragraph must prevail. To this court it seemingly expresses the legislative intent of continuing control. (Fischel v. Steel Management Co., supra; Olympic Assets v. Hatch & Co., supra.)
Furthermore, the petitioner has failed to prove as alleged in the petition that ‘ ‘ the petitioner herein seeks in good faith to obtain possession of such business space for its own immediate and personal use.”
The uncontradicted and admitted testimony of the petitioner’s witness, Wyler, an officer of the petitioning corporation was to the effect that the new premises as is the present premises occupied by the petitioner, is to be used and occupied by five of its wholly owned subsidiary corporations to wit: Needlework Publications Inc., Layout Service Inc., Allied Graphic Presentations, Inc., Ridge Press, Inc., and another, as well as Maco Magazine Corporation not a subsidiary of the petitioner. Bach was to nay rent for the space occupied by it.
*783 The paragraph under which the petitioner seeks possession authorizes possession for the lessee or its ‘‘ subsidiary corporation ”. The paragraph does not authorize possession for 5 subsidiary corporations and an unrelated subtenant all of which pay rent for the space occupied by them. Nor does the paragraph permit occupancy for 100 other business concerns with which the lessee does business. Wyler also testified that his firm permits the personnel of 100 or more of its customers to use its space for business purposes when they come into New York City.
The petition is herewith dismissed and a final order awarded the tenant, for the petitioner has failed to meet the requirements of the new paragraph.